## Hoffman *against* Lee.

The declarations of a mortgagor, made after he has parted with the mortgaged premises, should not be received in evidence on the trial of a *scire facias* on the mortgage, when his grantee is the party in interest as terre-tenant.

A promise by a mortgagee, either verbal or written, to extend the time of payment of the money due upon the mortgage, *whereby a third person is induced to purchase the land from the mortgagor*, is binding; and a *scire facias* upon the mortgage, issued before the lapse of time mentioned in such promise, can not be sustained.

WRIT of error to the common pleas of *Venango* county.

*Scire facias* on mortgage by Hugh Lee against Jacob Hoffman.

On the 10th of March 1825, Jacob Lee gave a mortgage to Hugh Lee, on a tract of land, to secure the payment of money due Lee on three notes, amounting to about 160 dollars.   There was proof that in 1826 Jacob Hoffman agreed to sell the mortgaged premises to his son John.   Jacob had paid part of the money, about 80 dollars, as he alleged.   In June 1826 Jacob and John went to Lee's and informed him of the proposed sale, and Lee gave to John the following paper, which the witness called a release.

" 27th June 1826.   I agree to take one hundred dollars from John Hoffman, Jr., *in merchantable trade, at cash price*, payable in four annual payments, bearing interest from this date; and I agree to let the mortgage lie as it is during said time, and release the said mortgage, when settled.

"Hugh Lee."

Very soon after this, John Hoffman agreed to give his father land in Butler county, for the land in question ; and John was to pay Mr Lee this 100 dollars.   After this John went on to pay Lee, by giving him a rifle gun, working for him, &c., to the amount of 37 or 38 dollars.

[Hoffman v. Lee.]

John and his father rescinded their agreement to exchange, and John then indorsed on the above paper as follows: "I do assign the within lines, for value received, to Jacob Hoffman, and 37 dollars that I paid on the land while I owned it.    March 31, 1828.

"John Hoffman."

About this time Jacob Hoffman sold to Phipps, and wrote under the above, "I do assign the within lines or statement to J. Phipps, and there is 37 dollars paid on it.

"Jacob Hoffman."

On the 4th of April 1828, Hugh Lee issued a *scire facias* on the mortgage against Jacob Hoffman; and Jacob Hoffman, who was stated to be insolvent, in December following, gave Lee the following paper: "I hereby agree that the prothonotary amend the *scire facias* agreeably to the præcipe, and confess judgment thereon; the amount to be liquidated by the prothonotary.    Witness my hand and seal, 31st December 1828.

"Jacob Hoffman. [l.s.]"

On the 26th February 1829, David Phipps, on proof of the above facts, had the entry of judgment staid, and was permitted to defend as the party interested.

The cause was then put at issue; the pleas were payment, with leave to give the special matter in evidence, record and satisfaction, and replication and issues.    It is not expressly stated by whom the pleas were put in, but it is evident the only defence was by Phipps. After the foregoing facts and some others had been given in evidence, the plaintiff offered to prove the admission of Jacob Hoffman, made in the fall of 1828, of the amount due; this was objected to and admitted, and the court sealed a bill of exceptions.    After proving by a witness that in the fall of 1828 Lee and Hoffman came to the house of the witness, and Hoffman laid down a paper in Lee's handwriting, showing the amount due on the mortgage, and that being asked if it was correct, said he knew nothing to the contrary, &c., the counsel for Phipps asked the witness what he had heard Hoffman say as to the amount; this was to take from the effect of the admission just proved; this was objected to, and rejected, and another bill of exceptions was sealed.

*Pearson*, for plaintiff in error.    The declarations of the mortgagor should not have been received in evidence.    Parker *v.* Gonsales, 1 *Serg. & Rawle* 536; Babb *v.* Clemson, 12 *Serg. & Rawle* 329; Phœnix *v.* Day, 5 *Johns. Rep.* 429; Patton *v.* Goldsborough, 9 *Serg. & Rawle* 47; Kane *v.* Ellmaker, 7 *Serg. & Rawle* 1.

*Fetterman*, for defendant in error.

The opinion of the Court was delivered by

Huston, J.—We must recollect that a *scire facias* on a mortgage is a proceeding under an act of assembly against the land mortgaged;

III.—UU

[Hoffman v. Lee.]

that the judgment in it, is always to recover the amount due from the land : and no execution on such judgment can go against the other lands or goods or body of the mortgagor. All these may be liable, and may be reached on a judgment on the bonds or notes secured by the mortgage, or in debt or covenant on the mortgage if it is so expressed as to give those actions, and perhaps in *assumpsit* for the amount of the mortgage, if not accompanied by a bond, and if the mortgaged premises do not produce the debt. Hence, where the mortgagor has sold the premises embraced in the mortgage and given no covenant for title, a judgment on a *scire facias* on the mortgage cannot affect the mortgagor ; it only sells the mortgaged premises, and so affects the vendee of the mortgagor ; and this is more especially the case where the mortgagor is insolvent. While Jacob Hoffman was the owner of the land in question, his admissions of the amount due on this mortgage were good evidence against himself ; but he had sold in March 1828, and in the autumn following his admission of the amount due, though good evidence against himself in a suit on the notes, was no evidence against the vendee of the mortgaged premises ; and that vendee alone, and not Jacob Hoffman, would be affected by the *scire facias* on the mortgage, and the judgment and execution on it. For want of recollecting the special nature of the suit trying, and the judgment and execution on it, the judge fell into an error in admitting the admissions of Jacob Hoffman. Although Hoffman's name stood on the docket as defendant in the cause, yet the issue trying was between Lee and Phipps. Hoffman had confessed a judgment, and as respects him there was nothing to try : it was Phipps who pleaded and defended, and who alone could be affected. The plea ought to have appeared to be by Phipps; and if so, and a defence for the land by him, and verdict and judgment for him, his land could not be affected by a judgment against Hoffman. Something like this occurs in a case where an heir takes lands at an appraisement in the orphan's court, and enters into recognizance to pay the shares of the other heirs. By our law the lands are bound for the money. If the lands, or any part of them, be sold, the purchaser is sued in the *scire facias* as terre tenant, along with the conusor ; but they may sever in their pleas, and there may be judgment against the conusor, and a judgment in favour of the terre tenant who defends for his own interest ; he may have a release, or may be discharged by lapse of time, and then a judgment against the conusor cannot affect the land of the terre tenant in whose favour there is a verdict and judgment. And in such case it is decided that the admissions of the conusor, made after he had sold to the terre tenant, are not evidence against the terre tenant in a defence by him. 7 *Serg. & Rawle* 1. Those cases of a verdict and judgment for one defendant, and against another, in an action sounding in contract, have, by some, been considered as very heterodox, and even said to be inconsistent with the common law ; but a bill brought in by the late lord chief justice of the king's

[Hoffman v. Lee.]

bench in England, has directed that there may be a verdict for one of two joint, or joint and several promissors in a note, &c. &c. I suppose it will be admitted not to be contrary to the principles of the common law, but only to the former practice under that law.

Generally, the admissions of a vendor are not evidence, made after he has parted with all interest in the land; though his declarations while owner, are evidence against him and those claiming under him, if he is dead, or still interested, or out of the reach of process of the court. Packer *v.* Gonsales, 1 *Serg. & Rawle* 526.

The point in the second bill of exceptions will not then arise, but the judge was right in rejecting declarations made at another time. 5 *Serg. & Rawle* 295; 7 *Serg. & Rawle* 1.

The other objections made in this case all relate to the charge given to the jury by the judge; and although divided by the counsel into five, may be considered as really only two.

The judge charged that the paper given by Lee to John Hoffman might be considered as a statement of the amount due on the mortgage at that time, but it was not a release, nor an agreement to suspend proceedings for four years, if the payments were made as there proposed; and if it was such an agreement, it was not binding on Lee, because no notes or bonds were given by John, and therefore no consideration; and because John was not quite twenty-one years of age when he received that paper, though he was of age when he assigned it to Phipps.

In the first place we are all of opinion it was a binding agreement: whether such a paper given to Jacob Hoffman, the debtor, would have been binding, is not the question, though if a mortgagee gives a writing to his mortgagor that he will accept a debt, presently due, if paid in instalments at specified times, and receives one or more of these as they fall due, it may in some instances be a great fraud to afterwards proceed before the other instalments fall due; and I am not prepared to say that it would, under all circumstances, be void: but that is not this case; it was here given to a person proposing to purchase, and who, having received it, did purchase. John probably knew that he could not pay 100 dollars within a year, but might be very confident that he could, by his labour raise 25 dollars per year. In consequence of this paper he gave his gun, and he laboured for Lee to the amount of 37 dollars within the first year; now any injury to another, any labour on him, any hardship induced to him, is a good consideration to support an agreement and make a promise binding on him who made it. It is not fair nor honest to make a promise which induces a man, a stranger to the party, to pay his goods and give his labour, to exchange his own property for an incumbered property, on a promise not to press the incumbrance, and then say, I make nothing by this indulgence which I promised you, and I will not meet my promise: it cannot be done after putting the other to loss of time or labour or property; or after, by such promise, inducing him to do what he never would have done but for reliance on

such promise. True, the mortgage was a deed under seal, and this not under seal, but it was, though informal, enough to induce John to exchange for that land and pay one-third of a debt which he was not liable for, and never would have been, except for that paper. And in equity it was as binding as if more formally drawn, and under seal and witnessed.

In Livingston *v.* Byrne, 11 *Johns. Rep.* 555, we find a case like this in some respects, but infinitely stronger. There, L. had a deed of trust of lands dated the 1st of December 1803 ; and on the 24th of December 1803 another deed, to L. and to others, containing the lands in the first deed, and many other lands also, in trust to pay the debt of the grantor : on the 27th of December 1803, a judgment for a large amount was obtained against the grantor and an execution issued, and the lands comprised in the deeds of trust about to be sold by the marshal for this large debt which was due to the United States. To induce purchasers to bid, the three trustees published in the public papers that they would, if required, release to any person who should purchase any of the Livingston lands, all their right under their deed of trust of the 24th of December 1803. Byrne became the purchaser of half of eight hundred lots in the town of Esperanza (now Athens) for 11 dollars, a monstrous undervalue. J. R. Livingston, the trustee in the first deed of the 1st of December, thought himself justified under the *circumstances* (although he agreed to release all right under deed of the 24th of December) to retain these lots which were in his deed of the 1st of December. The chancellor held him bound, by his advertisement, to release all right under the first as well as the second deed of trust : he appealed, and the same was affirmed by the unanimous opinion of the court. Here was no consideration to J. R. Livingston ; the object of getting a fair price for the property had failed ; his title was a deed under seal ; his promise not under seal, a mere advertisement in a newspaper ; that promise was not barely a promise to suspend payment, but to give an absolute release of all right to the property ; and he was compelled to execute such release, because his parol promise was known and seen at the time of the sale, and induced Byrne to bid. A parol agreement or engagement at one time weighed nothing in a court of law, when used against a deed or instrument under seal ; but in equity the inquiry is, did the person make an agreement fairly and without any fraud or imposition, did he derive any benefit, or expect to derive any benefit from it, or did he induce any other person to incur expense or risk, or perform service, or otherwise subject himself to loss or risk ? and if so, the agreement is enforced, though not sealed.

There is another point in which we think there was mistake in the court below. A sum payable in four annual payments can in no sense be understood to be demandable within three years ; if one of the payments was to be made on the day of the contract, it would be, and always has been, and is expressed, one-fourth to day and

[Hoffman v. Lee.]

the residue in three annual payments. The first instalment was paid and one-half of the second, and the second was due when suit was brought; the suit was, therefore, commenced when nothing was demandable by the plaintiff.

Judgment reversed.