## ⸗ Colwell *against* Hamilton.

One who bargains for a good title, is not bound to pay the purchase-money upon the tender to him of a defective or doubtful title.

A covenant by a vendor that "he will make and execute to the vendee a good and sufficient deed for the land in fee simple, with general warranty of a clear title, and free from all incumbrance," is not performed by the mere execution and tender of a deed containing such a covenant, when a defect in the title or an incumbrance exists in fact.

ERROR to the district court of *Allegheny* county.

An amicable action in covenant was entered in the court below by the agreement of the parties, in which William T. Hamilton and William V. Robinson were plaintiffs, and Stephen Colwell, the plaintiff in error, defendant. The claim of the plaintiffs below was a balance of the purchase-money of a certain piece or parcel of ground, situate in the city of Pittsburgh, being parcel or part of lots Nos. 401 and 402, according to the original plan of said city, due upon an article of agreement, made between the parties for the sale of the ground, under their respective hands and seals, dated the 28th day of February 1836. By the agreement, the plaintiffs below bound themselves to make and execute to the defendant below, his heirs and assigns, a good and sufficient deed for the said piece of ground in fee simple, with general warranty of a clear title, and free from all incumbrances, in consideration of the defendant's paying thereafter, according to the terms of the agreement in that behalf, the sum of 8000 dollars. Of this sum the defendant paid the plaintiffs below, before the entry of this action, 6000 dollars, leaving still unpaid of it 2000 dollars with interest from the 1st day of April 1836, which he objects to paying, on account, as he alleges, of the property being incumbered and title of the plaintiffs to it defective, or at least doubtful, and not such, as by the terms of their covenant they bound themselves to give him. A case was stated by the parties, in the nature of a special verdict, for the opinion of the court below, showing the facts already stated, and the nature of the plaintiffs' title, together with the facts and circumstances attending it, which are substantially as follows: The plaintiffs below claim to derive their title to the ground in question from John Woods, Esq., formerly of Pittsburgh, who, it is agreed, was duly seised of it in fee, at the time of making his last will and testament, by which he authorized his executors therein named, to sell and convey it, and continued so seised thereof until his death. After his death, James Ross, Henry Woods and John M'Donald, Esqs., the executors of his will, in pursuance of the authority therein con-

tained for that purpose, by their deed, bearing date the 17th day of July 1819, for the consideration of 3416 dollars 50 cents, therein mentioned, sold and conveyed the piece of ground aforesaid, to Samuel Thompson in fee. The purchase-money, however, not being actually paid by Thompson, he thereupon by his deed of the same date, mortgaged the said ground in fee to the said executors, for the purpose of securing the payment thereof. But failing afterwards to pay it, according to the tenour of the mortgage, the executors brought their action of ejectment against him, and a tenant in possession claiming under him, in the court of common pleas of Allegheny county, to April term 1822; and by virtue of their right as mortgagees by the proceedings had therein, recovered the possession of the said ground. Having thus obtained the possession thereof, the said James Ross, Henry Woods and John M'Donald, Esqs., on the 18th day of July 1822, by their deed for the consideration therein mentioned, of 3963 dollars 82 cents, sold and conveyed the same, in fee simple, to Theodosia Woods. In this deed the grantors designate themselves as the executors of John Woods, Esq., deceased, and by way of recital set forth the fact of their having been appointed such by the last will and testament of the deceased, and their power under said will to sell and convey certain portions of the real estate of the deceased, for the purposes therein mentioned, and that in pursuance thereof, and under the authority therein contained, they had sold and conveyed the piece of ground in question, as already stated, to Samuel Thompson; without mentioning the mortgage taken by them of him to secure the purchase-money, but state the fact of Thompson's having made default in paying the purchase-money, and that in consequence thereof, they, "the executors aforesaid, have by due process of law regained the title and possession of said real estate, as will fully appear by the record of a certain action of ejectment," being the same mentioned above. Then after stating by a further recital, that the annuity given to the said Theodosia Woods, by the will aforesaid, had fallen greatly in arrear; and that it had become necessary to dispose of some portion of the real estate in fee simple, in order to comply with the injunction of the said will, they by their individual names, with the addition thereto of "executors, as aforesaid," grant bargain and sell, the piece of ground in question, as stated above, to the said Theodosia in fee, concluding with a covenant in the following words: "And the said James Ross, Henry Woods and John M'Donald, their heirs, executors and administrators, will for ever warrant and defend the same to the said Theodosia, her heirs and assigns against them, the said James Ross, Henry Woods and John M'Donald, or either of them, and the survivors or survivor of them, and against every person lawfully claiming the same from, by or through them or either of them, or the survivors or survivor of them." The executors of Theodosia Woods, after her death, under a power contained in her will, by their deed, dated the 15th of July

1833, sold and conveyed the said ground, for the consideration therein mentioned, in fee to Westly P. Hunt, Theodosia P. Hunt and Robert A. Hunt, who, by their deed dated the 10th of December 1833, for the consideration therein mentioned, sold and conveyed the same in fee, to William T. Hamilton and William V. Robinson, the plaintiffs below. But during the time that Thompson held the ground under the conveyance from the executors of John Woods, deceased, John Gano, on the 4th of November 1819, obtained a judgment in the court of common pleas of Allegheny county against him, for a debt of 1384 dollars 81 cents, under which the ground was regularly taken in execution, and sold, as the property of said Thompson, under a writ of *venditioni exponas*, returnable to October term of the said court 1833, to James Ross, Esq., one of the executors of the said John Woods, Esq., deceased, and grantors of the said ground to the said Theodosia Woods, for the sum of 5000 dollars; and a deed, perfecting the sale thereof, was made to him by the sheriff, to whom the process was directed, and duly acknowledged in open court on the 25th day of November 1833.

The court below rendered a judgment for the plaintiff.

*Shaler*, for plaintiff in error.

*Metcalf*, for defendant in error, cited 7 *Watts*, showing the appropriation of the money arising from the sheriff's sale of the property to Mr Ross. Likewise, 1 *Cond. Chan. Rep.* 567; 2 *Simons & Stewart* 519. On the subject of estoppel, 12 *Johns.* 201; 3 *Ohio Rep.* 134; 1 *Ibid.* 477. And as to the effect of recitals in a deed, 2 *Stark.* 52; 3 *Eng. Com. Law Rep.* 240; 6 *Watts* 60. And to show that the grantors in their deed to Theodosia Woods, would be liable on their covenant, which must be regarded as personal. 2 *Whart. Dig.* 56; 4 *Burr.* 2008; 1 *Johns. Ca.* 90; 16 *Johns.* 36; 8 *Mass. Rep.* 162; 11 *Johns.* 94; 2 *Prest. on Abstr.* 210.

The opinion of the court was delivered by

KENNEDY, J.—The terms of the covenant, on the part of the plaintiffs below, being "to make and execute to the defendant, his heirs and assigns, a good and sufficient deed for the said piece of ground in fee simple, with general warranty of a clear title, and free from all incumbrances," cannot be satisfied merely by the execution and tender of a deed of conveyance containing a covenant to that effect, when a defect in the title or an incumbrance on the estate appears or is shown to exist; because, from the language of the covenant, it is manifest that it was the intention of the parties at the time, that the title to the estate and the estate itself, should be free from all objection or defect and incumbrances at the time of the deed's being executed. The insertion, however, of such a covenant in the deed, would doubtless be requisite for the purpose

[Colwell v. Hamilton.]

of protecting the purchaser from defects and incumbrances which may exist, but are not known to him. In such case, it is not necessary that the purchaser should show that the title of the seller is decidedly bad, in order to warrant the refusal of an acceptance of it. It is sufficient for him to show that it is doubtful, or attended with circumstances unknown to him at the time of the purchase, which must in all human probability involve him in a lawsuit and the expenses thereof, unless he should buy his peace by paying a very considerable sum of money. In the ordinary case of an agreement for the purchase of an estate, couched in terms much less strong than the present, merely binding the seller to make a good title to the purchaser for it, the latter cannot be compelled to accept of a doubtful title. This is the settled and invariable rule in equity on a bill for a specific performance of the contract. Morlow *v.* Smith, 2 *P. Wms* 198; Mitchell *v.* Neale, 2 *Ves.* 679; Shapland *v.* Smith, 1 *Bro. C. C.* 75; Cooper *v.* Denne, 4 *Bro. C. C.* 80; 1 *Sugden on Vend.* 339, 340, and the cases there referred to. And I take it that it is also a good defence at law too, in an action brought by the vendor to compel the payment of the purchase-money as in this case. Hartley *v.* Penhall, *Peake's Ca.* 131; Wilde *v.* Trout, 4 *Taunt.* 334. For it would be most unreasonable to make the purchaser pay the purchase-money without getting what he contracted for; such as a title free from all objection, if not suspicion. But can one be so, which, if accepted of, and the estate taken possession of under it, will, to an absolute certainty almost, involve the purchaser in a law suit? As it appears plainly that he could not have contemplated any thing of the kind in making his contract for the purchase, it would be highly unjust to force such an evil upon him.

Then what is the title which the plaintiffs below have shown for the ground sold by them to the defendant? They, as it appears, are invested with the title, or right which Theodosia Woods had to it; but she had no claim, excepting what she had acquired under the conveyance from James Ross, Henry Woods, and John M'Donald, Esqrs.; because they could only convey what they had at the time; and it is perfectly clear, that at the time they conveyed to Mrs Woods, they had no interest or authority whatever in or over the ground, excepting what was vested in them by the mortgage, which they had taken of Samuel Thompson; for, under the authority given to them by the will of their testator, they had by their deed of conveyance divested themselves of all their right and authority so acquired, and thereby invested Samuel Thompson with the fee simple estate in the ground, which remained in him, so far as it was not affected by the mortgage. The mortgage, however, *in law*, merely stripped Thompson of the legal title; but in equity, it being considered a security simply for the payment of the debt mentioned in it, he still continued to be the owner of the ground in fee; and the judgment of Gano, as soon as obtained, became a lien upon it as such, subject, however, to the prior lien created by the mortgage.

[*Colwell v. Hamilton.*]

Thus it appears that the plaintiffs below, being the assignees of Mrs Woods, can, at most, independently of the circumstance of Mr Ross having purchased all the estate and interest of Samuel Thompson in the ground at sheriff's sale, under the Gano judgment, be considered as the assignees of the mortgage given by Thompson, and entitled as such to hold the *possession merely* of the ground, for that was all that was in reality regained by Messrs Ross, Woods and M'Donald, in their action of ejectment against him, until they are paid the amount of the mortgage-debt, with interest thereon, during the time that Thompson had the possession. It was certainly a mistake in those gentlemen to recite in their deed of conveyance to Mrs Woods, that they had by their proceeding in the action of ejectment *regained* the *title;* for the title to the freehold, or fee in the ground, was in nowise affected thereby: it remained as it did before, without any change; it was the *possession* alone that was regained and changed by the recovery in the ejectment, which had no effect whatever in foreclosing the mortgagor's right to redeem the estate. But it is said, as Mr Ross became invested by his purchase at the sheriff's sale with all Thompson's interest and estate in the ground, that his purchase thereof enured, under his covenant contained in the deed made to Mrs Woods, to her benefit, and passed to the plaintiffs below as her assigns: that it would be an infraction of his covenant to attempt to claim the ground as his right; and hence he would be estopped thereby from doing so. But as it appears that a considerable portion of the money paid by Mr Ross for the ground, on the sheriff's sale thereof, was actually paid by him out of his own pocket, it is therefore most probable that he will, if he has not already, assert his right acquired under the sale, and be unwilling to give it up, without being reimbursed at least the amount of the money so paid out, with interest thereon. Now it may be, that Mr Ross, under the liberal construction given to covenants for title in the case of Butler *v.* Swinnerton, *Palm.* 339; S. C. *Cro. Jac.* 657; and the principle established in Hurd *v.* Fletcher, *Doug.* 43, and recognized in Evans *v.* Vaughan, 4 *Barn. & Cress.* 261; S. C. 10 *Eng. Com. Law Rep.*, may be precluded from claiming the ground in question, even if he were to tender to the plaintiffs below the amount of the mortgage-debt, with the interest thereon, as it might be thought to be a claim derived "through himself," which would be in opposition to his covenant contained in the deed made by him and the other gentlemen to Mrs Woods. But it must be observed that, although Mr Ross being no party to this action, has had no opportunity of being heard on the subject of his right or claim, and therefore would not be bound or concluded by any decision which we would make here in regard to his right, yet it is obvious, if we were to come to a conclusion against his right, and it should happen to be erroneous, that it might prejudice him, perhaps, hereafter, so far as to defeat his right altogether in a future action brought by him to enforce it. The right, therefore, of a third per-

x.—2 L

[Colwell v. Hamilton.]

son, brought collaterally into view, as his is here, ought not to be passed on by the court, when he cannot be heard in defence of it, especially where any doubt or difficulty arises in regard to it, excepting when it is indispensably requisite to do so, in order to settle and determine the issue between the parties to the action. But here we think such necessity does not exist: for the claim of Mr Ross against the title or right of the plaintiffs below presents a question, perhaps, somewhat new here, and such as will certainly be attended with an expense, and perhaps some risk, to have it settled, which the plaintiffs below, according to their agreement with the defendant for the sale of the ground in question, have no right to impose on him. We, therefore, without deciding upon Mr Ross's claim, reverse the judgment rendered for the plaintiffs below, and direct judgment to be entered, on the case stated, for the defendant.

Judgment reversed, and judgment for the defendant.