*Twenty-first Judicial District.*

# In the Court of Common Pleas of Schuylkill County.

---

### LEWIS B. SCHOCK v. JOHN BANKES.

In Pennsylvania a judgment binds both the legal and equitable estate of the defendant in land.

A judgment not revived within five years, ceases to be a lien upon real estate, not only as to subsequent judgment creditors but also as to subsequent purchasers.

The 8th section of the act of 16 April, 1849, fixing the time of five years from the date of placing the terre tenant's deed on record, was intended to remedy the supposed hardship of the decision in Armstrong's appeal, 5 W. & S. 352.

**Rule to show cause why the judgment should not be satisfied.**

Opinion delivered July 7, 1873, by

WALKER, J. On 25 July, 1863, Richard Kear sold to Joseph Charon, by articles of agreement, a lot of ground in Mahanoy City for $350 ; $100 was paid in cash and the balance was to be paid in one and two years.

On 2 December, 1865, Charon sold and conveyed in writing, his

interest in the lot to Valentine Wagner.   Wagner paid him *and took actual possession of the lot.*

On 4 December, 1869, Wagner, in writing, sold the lot to John Bankes, and took as part payment other real estate.   Bankes also took actual possession of the lot.

On 21 January, 1871, Bankes confessed a judgment to Lewis B. Schock for $1,429.76, and on 14 October, 1871, paid on account $239.88. For the balance, ($1,200,) Schock agreed to take the Mahanoy lot, *clear of all incumbrances,* as soon as Richard Kear's executor could make the deed to Bankes.   On the 24 Jan., 1871, a deed was delivered by Michael Bright, surviving executor of R. Kear, to Bankes for the lot ; and on 6 February, 1871, Bankes and wife assigned the premises to Schock, who received the deed and took possession.   Previous to this, and on 9 August, 1867, there was a judgment entered against Charon for $366.04, and revived by agreement on 29 July, 1872, against Charon alone.   On the 10. September, 1867, another judgment was entered against Charon for $222, which was revived by sci. fa. in March, 1873, against Charon.

The question now is, whether this lot is free from the lien of these two judgments against Charon, in accordance with the agreement of the parties.

Under a contract for the sale of land like the present, it has been repeatedly ruled that the vendee has a right not merely to a good, but an *indubitable* title, free from all restriction and encumbrances.   Only such a title is marketable.   Swayne *v.* Lyon, 17 P. F. S. 436 ; Bumberger *v.* Clippinger, 5 W. & S. 311 ; Ludwick *v.* Huntzinger, 5 W. & S. 51 ; Speakman *v.* Forepaugh, 8 Wright 363 ; Colwell *v.* Hamilton, 10 Watts 413.

This is different from a case when a vendor binds himself to convey his right, title and claim to the land.   For then there is no implication of a covenant that he has a good title.   Herrod *v.* Blackburn, 6 P. F. S. 103.

Upon the sale of this lot by Richard Kear by articles of agreement, on 25 July, 1863, to Joseph Charon, the equitable title passed out of Kear and vested in Charon ; while the legal title still remained in Kear, subject to the payment of the balance of the consideration.   In such case the vendor is regarded as a trustee of the legal title for the benefit of the vendee, and the latter is also esteemed a trustee of a beneficial interest in the land *to the extent of the unpaid purchase money.*   Gerrard *v.* Lantz, 2 Jones 194; Morgan *v.* Scott, 2 Casey 51.   This is, then, the relationship of Kear and Charon.

The sale of the legal estate under a judgment *mesne,* between the time of making the articles of agreement and the execution of the deed, would transfer as a necessary incident the money remaining unpaid.

In Pennsylvania, all the real estate of a debtor, *whether legal or equitable,* is bound by a judgment against him, and may be taken in execution and sold for the debt.   At common law, an equitable estate is not bound

by a judgment, or subject to execution. We have no court of chancery, and have therefore established it as a principle, that both judgment and execution have an immediate operation on equitable estates (9 S. & R. 397). If, then, a judgment binds an equitable interest in land, *a fortiori*, it binds a legal interest to the extent of the interest at the time of the judgment. McMullen *v.* Wenner, 16 S. & R. 21, per Rogers, J.

No doubt under these authorities, all the equitable interest of Charon in the land would be bound by a judgment against him, provided the judgment was obtained against him while he held an interest in the land. But he sold his interest to Wagner in 1865, and received the money, and the judgments were not entered against him until 9 August, 1867. It is therefore plain that Wagner took the equitable title, free of these encumbrances. The record further shows that when these two judgments were entered in July, 1872, and in March, 1873, against Charon, the terre 'tenant was not made a party to the proceedings. This was absolutely necessary to continue the lien of the judgments against subsequent purchasers, under the 2d and 3d sections of the act of 4 April, 1798, and the 1st section of the act of 26 March, 1827. (Purdon's Dig. 819, pl. 3, 4 and 5.) (The reasons for the passage of the act of 26 March, 1827, is explained by Judge Sargeant in Armstrong's appeal, 5 W. & S. 354.)

It is essential, in order to continue the lien of a judgment upon land which has been sold and conveyed that the terre tenant should be made a party to the sci. fa. Lusk *v.* Davidson, 3 Pa. Rep. 229 ; Davis *v.* Ehrman, 8 H. 256.

And a judgment not recorded after five years ceases to be a lien as well against subsequent judgment creditors as against subsequent purchasers. Bank of America *v.* Fitsimmons, 3 Binney, 342.

In Armstrong's appeal, 5 W. & S. 352, it is ruled that a revival of judgment by agreement, to which a terre tenant is not a party, will not continue the lien *as to him*, although the deed by which he became terre tenant *was not recorded.* The terre tenant had not even possession.

To remedy the hardship of this decision, the act of 16 April, 1849, was no doubt passed. For the 8th section enacts that "In all cases when a judgment has been or shall be regularly revived between the original parties, the period of five years, during which the lien of the judgment continues, shall only commence to run in favor of the terre tenant from the time that he or she has placed their deed on record. Provided that this act shall not apply to any cases which have been finally adjudicated, or where the terre tenant is in actual possession of the land bound by such judgment by himself or tenant.

In the present case, actual possession of the land was taken, which was sufficient notice of alienation and ownership of the occupant.

The proceedings in the Orphans' Court, to which Wagner was not a party, could not affect his title, and the purchaser from him would stand in

his shoes. Neither would the admissions or acts of Charon affect the title derived from him, for the declarations of a vendor *after he has parted with his interest* are inadmissible to affect the title of his vendee. Packer *v.* Gonsalus, 1. S. & R., 526; Patton *v.* Goldsborough, 9 S. & R. 47; Brindle *v.* McIlvaine, 9 S. & R., 74; Babb *v.* Clemson, 12 S. & R. 328; Hoffman *v.* Lee, 3 Watts, 352; Morton *v.* McLaughlin, 13 S. & R. 107; Gregory *v.* Griffin, 1 Barr 208.

The rule is therefore made absolute.

*H. B. Graeff,* Esq. for plaintiff; *O. P. Bechtel,* for defendent.

---

*Twenty-sixth Judicial District.*