# Winton's Appeal.

## Winton *versus* Morss *et al.*

1. There is no law in Pennsylvania to warrant the payment as "costs in the cause" of the fees of counsel for professional services, or of the value of the time bestowed, or the amount of expenses incurred by a party, in its preparation and trial.

2. While a reasonable discretion in chancery cases is permitted to Courts of Common Pleas in the allowance of costs, it must be exercised in view and with the aid of the analogies which the statutes relating to costs in actions at law afford, and all items in the nature of allowances, and which may not properly come within the denomination of costs, must be excluded.

3. The court below made a decree that plaintiff could take out of court a deed for the "Newton third" of certain land upon payment of costs, but in the same decree prescribed the conditions upon which another, the "Vosburg third," was to be conveyed, among which was the direction that plaintiff should pay a certain sum found due by him. He paid the costs, but did not comply with the last direction. Subsequently the same court, in construing this decree, held that complete and contemporaneous and not partial performance of its conditions had been in their contemplation, and refused to allow the deed for the "Newton third" to be taken out of court until the conditions as to the "Vosburg third" were complied with. *Held*, that this was not error.

4. The decree above referred to was made on January 16th 1875. On January 30th 1878, and five days after this appeal to the Supreme Court was taken, the court below amended the decree as follows: "And upon the plaintiff's failure to make said payment for a period of thirty days, after the filing of this order, and notice of the same to him that he, the said plaintiff, be for ever barred from all claim to and equity of redemption in the said 'Vosburg third.'" *Held*, that this action was erroneous, as it was an attempt to bar a mortgagor's equity of redemption, which in this state can only be extinguished by his own agreement, by some act done by himself that estops him, or by a judicial sale.

March 15th 1878.     Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the Court of Common Pleas of *Luzerne county* : Of January Term 1878, No. 186.  In equity.

This was a bill in equity filed by W. W. Winton, against D. K. Morss, surviving executor of James Mott, deceased, and others.

The questions raised by the record in this case, grew out of previous orders and decrees made in the same cause.

In 1870 the plaintiff filed his bill in equity, praying that the effect of a certain paper, executed between Barker, under whom plaintiff claimed, and defendants' testator, might be decreed to be a mortgage.  This paper embraced a tract of coal land in Luzerne county, and covered an undivided two-thirds claimed by plaintiff, the defendants claiming the other third.  The whole tract had been under a lease to the Delaware and Hudson Canal Company, the tenant of both parties, by lease executed by both parties.  The tract, for the purpose of mining coal, had been in the possession of

[Winton's Appeal.]

the Delaware and Hudson Canal Company, since about the year 1859.

Originally these two "thirds" of the tract had been included in the same agreement, but in the course of dealing between the parties had been differently treated, and for convenience came to be designated as the "Newton third" and the "Vosburg third."

The litigation was long and tedious and resulted in the following decree, entered in the court below on the 26th of January 1875.

1. That upon payment, by the plaintiff, of the costs of this suit within sixty days after the filing of this decree, the said D. K. Morss, surviving executor of the last will and testament of James Mott, deceased, is authorized and directed to make, execute and deliver unto the said plaintiff, his heirs or assigns, a full and sufficient conveyance in fee simple of, in and to the undivided third interest in the tract of land situate in the township of Blakely, Luzerne county, Pennsylvania, known as the Calvin Barber tract, containing about fifty acres, being the same undivided interest therein which Henry W. Newton by indenture, dated the 29th day of April 1862, conveyed to Abel Barker, and which the said Abel Barker, by assignment written upon the back of said deed, conveyed to James Mott, deceased, under and in pursuance of a certain agreement between the said James Mott in his lifetime and the said Abel Barker, bearing date the 29th day of April 1862.

The said conveyance to be made in pursuance of this decree may be made and executed by the defendants to the plaintiff in the manner and form provided in the aforesaid agreement, made as aforesaid, between the said James Mott; in his lifetime, and the said Abel Barker, bearing date as aforesaid, the 29th day of April 1862.

2. It is further ordered, decreed and adjudged that the plaintiff pay the costs of this suit.

3. And it is further ordered, adjudged and decreed that upon the payment by the plaintiff to the said defendants of the sum of ten thousand nine hundred and forty-one dollars and fifty-two cents, together with lawful interest thereon, from the first day of December 1873, within sixty days from the filing of this decree, the said D. K. Morss, surviving executor as aforesaid, shall make, execute and deliver unto the plaintiff an indenture of deed in fee-simple and clear of all encumbrances done or suffered by the said James Mott, or his legal representatives, except as hereinafter specifically expressed and excepted for another one undivided third part of and interest in and to the aforesaid Calvin Barber tract "Vosburg third," described more particularly in the plaintiff's bill and exhibits, making two-thirds thereof in all, to be conveyed under this decree, excepting and reserving out of the reassignment of said Newton third and the conveyance of said Vosburg third as herein decreed, the rights and privileges of the Delaware and Hudson Canal Company to mine and carry away coal from the said

Calvin Barber tract, under and in pursuance of a certain indenture of lease, bearing date the twenty-eighth day of August 1858, made between the said James Mott, Henry W. Newton and Charles E. Vosburg, of the first part, and Abel Barker, Lewis Pughe and Edward Jones of the second part, which lease is now assigned t the president, managers and company of the Delaware and Hudson Canal Company; also excepting and reserving the rights of said company under a lease, supplemental to said last-described lease between James Mott, Charles P. Wurts and Abel Barker of the first part, and Lewis Pughe, Abel Barker and Edward Jones of the second part, also assigned to said company, said lease and supplement being recorded in the recorder's office of Luzerne county.

The "costs," as filed, were as follows:

"Defendant's bill," including his personal "expenses and time" in conducting the litigation and counsel fees:

| | |
|---|---:|
| The defendant's bill filed, . . . | $3,560 75 |
| Prothonotary, . . . . . . . | 36 95 |
| Com., . . . . . . . . . | 50 |
| Examiner, . . . . . . . | 300 00 |
| Master, . . . . . . . | 600 00 |
| Attorney, . . . . . . . | 3 00 |
| | $4.501 20 |

From this decree both parties appealed, and in June 1876, the following decree was made by the Supreme Court:—

"Decree of the court below affirmed and the appeal of each dismissed, the appellant in each case to pay the costs of this appeal; this decree is subject to this modification in Winton's appeal, that it shall not be considered as affirming the bill of costs as filed, which is hereby directed to be examined and taxed by the court below, so as to allow only reasonable charges to D. K. Morss, for his time and expenses, and for counsel fees."

The cause was again referred by the court below to "examine and tax the bill of costs as filed," and decree entered that they be paid as taxed. This forms the subject of plaintiff's assignments of error 1, 2, 3 and 4 herein.

The plaintiff thereupon paid the costs and moved the court for permission to take the deed for the "Newton third" out of court. (Deeds for both thirds had been executed by defendants, and filed in court under the original decree.)

No payments being made on the $10,941.52 due from plaintiff on the "Vosburg third," the defendants asked the court for a decree "barring the plaintiffs' right of redemption."

These motions were both refused by the court below in the decree as follows: "Nor do we deem it right, whilst that interest (the "Vosburg third") is kept in suspense, through either the action

or inaction of the plaintiff, to grant him permission to take the Newton deed out of court, and the motion is refused." This order forms the plaintiff's fifth assignment of error.

The plaintiffs still failing and refusing to make any compliance with the decree of 1875, requiring payment of $10,941.52, and interest due the defendant on the "Vosburg third," the defendants undertook to secure the rents due and to become due from the Delaware and Hudson Canal Co., for coal mined on the premises. These premises were becoming exhausted of the coal, and it began to be doubtful if they were worth the $10,914.52. The Delaware and Hudson Canal Company had been notified by the defendants to retain their rents and they had remained unpaid for some years.

To that end the defendant filed the following petition, setting forth the previous history of the litigation and concluding, inter alia,

"And your petitioner further avers that he has been at all times ready and willing to carry out and comply with the decree of your honor as aforesaid; has tendered to the plaintiff and has filed the deeds to him for the said Newton and Vosburg thirds, to be received by him upon payment as aforesaid, which the plaintiff has refused to make, although so requested to do, and which your petitioner, from the protestations made by plaintiff in his bill, supposed he would do, and he still declines and refuses to pay said sum of $10,941.52 and interest, the amount to be paid on the Vosburg third; and your petitioner further shows that the value of the said Vosburg third has depreciated by reason of the taking out of coal by the Delaware and Hudson Canal Company, under the lease as aforesaid; that it is entirely insufficient for the payment of the amount so due upon it as aforesaid; that neither has the purchase-money been paid by the said Barker or his assignee for the Vosburg third, nor has the balance due upon the sale of the Pancoast and Price mortgage been paid; but the amount is still due upon the two as hereinbefore stated, and your petitioner further avers that the said coal rents have been held in abeyance by the Delaware and Hudson Canal Company, and that they are now in the hands of the said company; and notice has been given that they should not be paid over to the said Barker or his assignees, and they have been so held by the said company till the rights of the parties should be legally determined. Your petitioner therefore prays your honor to grant a rule upon the plaintiff, and also upon the Delaware and Hudson Canal Company, to appear on some day certain, to be fixed by your honor, and show cause, if any they have, why the question of rents shall not be referred to the master, to ascertain and determine the amount thereof still due and owing from said company for coal taken under the lease aforesaid from the Vosburg third, and also from the Newton third, and why an order shall not be made by your honor upon said company for the payment of said rents to your orator, to apply on the balance found to be due to the estate of James Mott, deceased,

[Winton's Appeal.]

as hereinbefore stated, and also why an order shall not be made for the sale of the said Vosburg third for the payment of any balance that may be found to be due, after deducting the rents as aforesaid, and that the surplus, if any, shall be paid over to the said plaintiff, and to make such further order in the premises as to your honor shall seem meet and proper, and he will ever pray.

D. K. Morss."

Upon this petition orders were made as follows: "Now, 13th April 1877, on petition of defendants, rule is granted by the court upon W. W. Winton, plaintiff, and upon the Delaware and Hudson Canal Company, to appear on the 28th day of May next, to show cause why the question of rents shall not be referred to the master, to ascertain and determine the amount thereof still due and owing from said company for coal taken under the lease in the petition referred to from the Vosburg third, and also from the Newton third, and why an order shall not be made on said company by the court for the payment of said rents to defendants, to apply on the balance found due the estate of James Mott, deceased, and also why an order shall not be made for the sale of said Vosburg third for the payment of any balance that may be found due after deducting the rents, and that the surplus, if any, shall be paid over to plaintiff." And afterwards, 30th January 1878, the rule for an order on the Delaware and Hudson Canal Co. to pay said rents to defendants, and for an order for the sale of the Vosburg third is continued, and "The decree of 16th January 1875, ordering the plaintiff to pay the said defendants the sum of $10,941.52, together with lawful interest thereon from 31st December 1873, within the time specified, being the amount ascertained to be due on the Vosburg third, is hereby amended by adding this clause, to wit: 'And upon the plaintiff's failure to make said payment for a period of thirty days after the filing of this order and notice of the same to him that he, the said plaintiff, be for ever barred from all claim to and equity of redemption in the said Vosburg third.'

Garrick M. Harding, President Judge."

From this plaintiff appealed and filed the following assignments of error:

1. The court erred in making the following decree in favor of the defendant, to wit: It is further ordered, decreed and adjudged that the plaintiff pay the costs of this suit.

2. The court erred in decreeing costs to defendants for the personal expenses and time spent in the case by D. K. Morss; there being no fee-bill establishing such as costs or fees, and no Act of Assembly, or practice in equity, vesting such power in said court.

3. The court erred in decreeing the payment of the sum of $2500 to the defendant's counsel, by the plaintiff.

4. That the fees allowed and decreed to be paid to defendant's

counsel, and the charges of defendant, D. K. Morss, for time and expenses, are excessive.

5. The court erred in refusing the plaintiff's motion, to take out of court the deed made by the defendant to the plaintiff, for the Newton third, after payment of costs by the plaintiff, in accordance with and in pursuance of the decree of the court, and after said decree had been affirmed by the Supreme Court, and in deciding that the plaintiff was bound to redeem the Vosburg third from the mortgage of 15th December 1860, or he could not have the reconveyance of the Newton third.

6. The court erred in altering and changing the final decree in this case, and in adding to said decree as follows : " And upon the plaintiff's failure to make said payment for a period of thirty days, after the filing of this order, and notice of the same to him that he, the said plaintiff, be for ever barred from all claim to and equity of redemption in the said Vosburg third," which alteration, changing and amending of said final decree was made the 30th January 1878, after the writ of error was filed in said court below.

7. The court erred in assuming jurisdiction, by means of and under the petition of the defendant, filed the 13th April 1877, and in not dismissing the same, after answers filed, and in proceeding under the same, by the appointment of a master, to ascertain the rents unpaid upon the Vosburg and Newton thirds, by the Delaware and Hudson Canal Company, and in making said company a party to this case, by their decree and order of January 30th 1878, after the appeal and certiorari were filed in the court below.

*James Ryon* and *A. H. Winton*, for appellant.—Counsel fees and a party's expenses are not allowable as costs. A chancellor can tax as costs only such allowances as are prescribed by general rules of court or legislative authority. The Common Pleas of Luzerne County has no rule of court other than the general equity rules, and these do not provide for any such allowances. While courts of equity are not governed by the same inflexible rules as other courts in the allowance of costs, they are, however, restricted by certain fixed principles, and they are not entirely at the discretion of the court: 3 Daniels's Ch. Pract. 1 ; Brightly's Equity, tit. *Costs*, 548 ; 2 Smith's Ch. Prac. *637 ; Ins. Co. *v.* Corbin, 34 Leg. Int. 36 ; Marvine *v.* Drexel *et al.*, 1 W. N. C. 323 ; Tenor *v.* Hutton, 1 Phila. R. 50 ; Neel *v.* Neel, 1 Grant 171 ; Porter *v.* English, 1 Phila. R. 85 ; Good *v.* Mylin, 8 Barr 51 ; Ryckman *v.* Parkins, 5 Paige 543 ; Fales *v.* Stone, 9 Metc. 320 ; Leavitt *v.* Curtis, 19 Barb. 543 ; Grubb's Appeals, 1 Norris 23. The court had no power to impose the terms complained of in the fifth assignment of error: Dorrow *v.* Kelly, 1 Dall. 153.

A chancellor cannot alter or modify a decree after such decree

[Winton's Appeal.]

has been affirmed in the appellate court: Dennison *v.* Goehring, 6 Barr 402 ; Cox *v.* Breedlove, 2 Yerger 499 ; Haskell *v.* Raoul, 1 McCord Ch. Rep. 29; Calmes *v.* Ament, 1 A. K. Marsh. Rep. 342 ; Stafford *v.* Bryan, 2 Paige 46.

Our courts have no power to foreclose the equity of redemption: Wharf *v.* Howell, 5 Binn. 504; Dorrow *v.* Kelly, 1 Dall. 142; 2 Tr. & H. Pract. (3d ed.) 307.

The seventh error relates to the petition of the defendants, filed in this case on the 13th April 1877, over two years after the final decree was made. This proceeding is without name or precedent, is irregular every way, and should have been dismissed by the court. In that form and this case, the court had no jurisdiction, either of the parties, or the subject-matter of the dispute at that stage of the case.

*H. M. Hoyt,* and *Benjamin S. Bentley,* for appellees.—All the cases referred to by appellant clearly recognise the *power* of the court, in *proper cases,* to make such allowances as were here made. And having the power, we contend, that under the circumstances of this case, the allowances were just. The master and court both understood the case, and the relations of counsel thereto, and the trouble and expense incurred in its prosecution, and the court properly ruled that reasonable fees of counsel and the expenses should be paid.

The prayer in the plaintiff's bill was that the whole amount due from plaintiff to the estate of James Mott should be ascertained, and that he was ready and willing to pay such amount as soon as ascertained. The amount was ascertained. The prayer was entire, and the decree was entire, and the court had no reason to suppose but that the plaintiff would act in good faith and pay as he had promised, till after the decree was made, when, for the first time it became apparent that he did not intend to do it, but asked the court to sever the decree and give him the benefit of a part of it, without his performing the other part. This would have been against the spirit and the letter of the decree, against the allegations, promises and prayer of the plaintiff.

The sixth assignment is in reference to the change of the original decree. We would have been satisfied with an order to sell after a refusal to pay. To this we were manifestly entitled. If the plaintiff refused to take the property and to pay for it as he agreed to do, it comes with a bad grace from him to dictate what shall be done with it or what order the court shall make in regard to it. He sought the aid of the court, not only that he might have the right of redemption awarded to him, but also for specific execution of the contract by which he purchased. The court granted his prayers and the relief sought, and he then says "I ignore all that has been done," and the court has no power to do anything

[Winton's Appeal.]

more.    This we deny.    A court of equity has full power to exhaust
all remedies for reaching a final and equitable result.

The original and final decree made by the court, affirmed by the
Supreme Court, was in no way to be affected by what the defendant
asked to be done.    He asked for no review.    He needed no cross
bill.    All he asked or needed was that the decree should be
enforced.    His petition was remedial purely.    If he could not have
the decree enforced in some way it would be but a dead letter, and
all the labor bestowed upon the case would be lost.

Mr. Justice WOODWARD delivered the opinion of the court, May
6th 1878.

All due consideration was given to the point presented by the first
assignment of error when this cause was heard on the first appeal.
The laborious investigation by the master and Judge Dana's
thorough review of the report, resulted in the imposition of costs on
the plaintiff, and nothing appeared on the argument in 1876, to
show that any such error had been committed as to require that the
decision should be reversed.

It is possible that some unguarded language in the opinion of
this court in entering the former judgment, caused the misapprehen-
sion under which the rulings complained of in the second, third and
fourth assignments of error were made.    The bill of costs of the
defendants had not been taxed.    It was in the record exhibiting the
items charged for counsel fees, and for the time spent and expenses
incurred by Mr. Morss. ˙ No inquiry into the propriety of the
charges was attempted.    All that was meant to be said in referring
the subject to the Common Pleas was, that legitimate demands
should be sustained.    It is of frequent occurrence in equity practice
that compensation is given for professional services, and for the
labor and expenditures of a party when they have been rendered,
performed or paid for the protection or enhancement of a common
fund, or for the common benefit of all the parties to the controversy.
It could not be known, in the absence of all inquiry, that such
services, labor and expenditures had not been charged for here.    It
is true the compensation is usually described as "allowances," and
not as "costs," and is usually directed during the pendency of the
litigation.    But it was taken for granted that, although the claim
of the defendants was made in the bill of costs after the suit was
determined, it was still of the general character to justify the award-
ing of allowances as if they had been sought in the accustomed and
proper form.

It does not appear from any facts now disclosed that any services
were rendered, either by the counsel or by Mr. Morss, entitling them
or him to compensation under the only rule by which a demand
could be supported.    The litigation was adversary throughout.
There is no law in Pennsylvania to warrant the payment as "costs

in the cause," of the fees of counsel for professional services, or of the value of the time bestowed, or the amount of expenses incurred by a party in its preparation and trial. Without an Act of Assembly empowering it, the courts cannot create a fee-bill, and it would be a usurpation of legislative functions to allow as between party and party, charges to which no statute has ever given the character of costs. Since Wilt v. Vickers, 8 Watts 235, and Rogers v. Fales, 5 Barr 159, were overruled, compensation has never been recoverable for trouble and expenses in conducting a suit and establishing a right: Alexander v. Herr, 1 Jones 537. It was for the adjustment of costs, as such, that the record was sent back. There is no equity fee-bill in Luzerne, and while a reasonable discretion in chancery cases is permitted to the Common Pleas, it must be exercised in view and with the aid of the analogies which the statutes relating to costs in actions at law afford: Neel v. Neel, 1 Grant 171. In the re-taxation of the bill, all items in the nature of allowances, and which may not properly come within the denomination of costs must be excluded.

If the decree of the 26th of January 1875, had closed with the second paragraph, the plaintiff's complaint in the fifth assignment would be well-founded. The delivery of the deed for the Newton purpart of the land in dispute, was directed on payment of the costs, and they were paid. But the residue of the decree prescribed the conditions on which the Vosburg purpart was to be conveyed. Among them was the direction in the third paragraph that the plaintiff should pay the amount found due by him $10,941.52, to Morss's executor within sixty days. This direction was not complied with. Many obvious reasons may be conceived why the sum found due should be paid before partial execution by the defendants ought to be enforced. The plaintiff, in accepting the benefit bestowed on him, was bound to assume the burden coupled with it that was imposed. The court were construing their own decree, and when they held that complete and cotemporaneous, and not partial performance of its conditions had been in their contemplation, they affixed a meaning to it that was not inconsistent with its terms, and on grounds of original intention as to which they of all the world were most fitted to decide. The order for the delivery of the deed of the Newton third of the land to the plaintiff was properly refused.

There was error in entering the amended decree of the 30th of January 1878. This was done five days after the certiorari to bring up this appeal had been filed in the Common Pleas. It is possible the irregularity would not be fatal to the amendment if that had been providently made. But it was wrong on other grounds. It undertook finally to debar all claim of the plaintiff to the Vosburg third of the land at the expiration of thirty days, if, meanwhile, he should not pay the amount found due. The contract

[*Winton's Appeal*.]

between Mott and the grantors of the plaintiff had been declared to be a mortgage. And in this state a mortgagor's equity of redemption can be extinguished only by his own agreement, by some act done by himself that estops him, or by a judicial sale. Even after a recovery in ejectment, possession can only be retained by the mortgagee till the amount of the mortgage-debt is paid: Colwell *v.* Hamilton, 10 Watts 417. Our courts may acquire jurisdiction in equity against a mortgagor in a suit by the *cestuis que trust* of the mortgagees against them, and having thus assumed jurisdiction of the subject-matter, may proceed to decree a sale for the benefit of the plaintiffs; but they cannot do so at the suit of the mortgagees against the mortgagor: Ashhurst *v.* The Montour Iron Co., 11 Casey 30. The power of the court to amend the decree after three years had lapsed was discussed in the argument, but the question need not be considered now; as for other reasons the sixth assignment of error is sustained.

A final disposition of the rule upon the plaintiff and The Delaware and Hudson Canal Company, to show cause why an account should not be taken of the rents due from the company has not been made. The seventh assignment was argued, however, as if the rule had been decided. The proceeding is an anomaly. When it was begun, the decree had been entered two years. All controversies between the parties to the bill had been put at rest. The application was not founded on any condition the decree had prescribed. It was not a cross-bill, an interlocutory petition, or a bill of review. It was a claim for rents accrued during the contest, and had just the connection with that contest which a rule on a tenant, as an indifferent stakeholder, to show cause why mesne-profits should not be assessed, would have with an action of ejectment after the recovery of a verdict and the entry of a judgment against a former claimant of a tract of land. The rule is pending, and there may be rational and legal reasons why it should be made absolute. But if the question were here, no grounds can be now conceived for supporting the proceeding as a legitimate supplementary appendant to the original litigation.

> The decree is reversed, and it is ordered that the record be remitted for further proceedings, in accordance with the conclusions of this opinion.